## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 22-CV-23745-SCOLA/GOODMAN

ELIEZER TAVERAS,

      Plaintiff,

v.

FLORIDA DEPARTMENT OF
TRANSPORTATION, et al.,

      Defendants.

_____/

### REPORT AND RECOMMENDATIONS ON DEFENDANTS'
### JOINT MOTION TO DISMISS SECOND AMENDED COMPLAINT

In this civil rights action, *pro se* plaintiff Eliezer Taveras ("Plaintiff" or "Taveras")[1]

filed a Second Amended Complaint ("SAC") [ECF No. 85] against Defendants Alpine

Towing, Inc. ("Alpine") Larry J. Saravia ("Saravia" and together with Alpine,

"Alpine/Saravia"), the Florida Department of Transportation ("FDOT"), and Jared

Perdue ("Secretary Perdue" and together with FDOT, "FDOT/Perdue").

---

[1] "'*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys' and are liberally construed." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (quoting *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998)). Liberal construction, however, does not mean that a court may "act as *de facto* counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020).

The SAC alleges violations under 42 U.S.C. § 1983 (Count I) and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* (Count II) against Alpine/Saravia; declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (Count III) against FDOT; and injunctive relief (Count IV) and violations of 18 U.S.C. § 241 (Counts V and VI) against all Defendants.

Defendants filed a joint motion [ECF No. 88] seeking to dismiss the SAC. Plaintiff filed a response in opposition [ECF No. 89] and Defendants filed a reply [ECF No. 93].[2]

Senior United States District Judge Robert N. Scola, Jr. referred this case to the Undersigned "for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters, consistent with 28 U.S.C. § 636 and Local Magistrate Judge Rule 1." [ECF No. 34].

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Defendants' joint motion to dismiss [ECF No. 88]. The SAC [ECF No. 85] should be **dismissed in its entirety** but **without prejudice**. Plaintiff should be provided with one final opportunity to amend his pleading (if factually possible).

---

[2]     In their reply, Defendants raise the issue of whether Plaintiff (a *pro se* litigant) relied on artificial intelligence to draft his response, noting "stylistic difference[s]" between the response and other filings and citation (or miscitation) to case law which does not exist. [ECF No. 93, p. 2 & n.1]. The Undersigned issued an Order [ECF No. 102] concerning this issue.

I.      **Factual Background**[3]

The SAC alleges that FDOT "is an executive agency of the State of Florida having the powers and duties set forth in Section 334.044, Florida Statutes, and is authorized to sue or be sued in its own name." [ECF No. 85, ¶ 8]. FDOT Secretary Perdue "directs, administers, coordinates, and delegates the statutory duties of the FDOT." *Id.* at ¶ 9.

Alpine, a Florida corporation, "operates a towing company and tow and storage yard at 3500 NW 67 Street, Miami, FL 33147 (the 'Towing Yard')." *Id.* at ¶ 10. "Alpine is not a law enforcement agency with independent authority to enforce the law; however, it is authorized to tow vehicles parked on private properties under Fla. Stat. § 715.07, and Miami-Dade County Ordinance, Article III." *Id.* Saravia is Alpine's president and "ran the day-to-day operations of Alpine for the relevant time period." *Id.* at ¶ 11.

The SAC further alleges that:

8.      . . . . SunPass is the FDOT Prepaid Toll Program.

                                        ***

18.     **SunPass**, its employees, agents, or authorized representatives, with deliberate indifference to the consequences, **established and maintained a policy, practice, or custom (the 'SunPass Policy') to share to [sic] towing companies alleged toll debts of vehicle owners**.

19.     The FDOT and [Secretary] Perdue know, or should have known that predatory towing companies like . . . **Alpine[ ] use this information, and through intimidation, threats, and lies, including posing as law enforcement or executing acts of the exclusive prerogative of law**

---

[3]     The facts summarized herein are included for context only and the Undersigned makes no factual findings in this Report and Recommendations.

**enforcement, impound vehicles, scares [sic] victims into paying often non-existent or questionable debts, to retain the vehicles for longer period [sic] to charge more fees**.

20.     **The shared information works as a wanted or hold orders [sic] on vehicles with unpaid tolls**.

21.     The FDOT has not developed a meaningful post-deprivation hearing or judicial remedy for an owner of a seized vehicle in the situation [sic] when it is seized as described herewith.

22.     The FDOT is scienter [sic] that predatory towing companies are using the alleged toll debt to defraud citizens by impounding and retaining their vehicles, but has not taken any preventative measures to stop this illegal practice, because it benefits from it.

*Id.* at ¶¶ 8, 18–22 (emphasis added).

Plaintiff is the owner of a Mazda CX9 (the "Vehicle"). *Id.* at ¶ 24. He "contracted with SunPass to participate in its electronic toll payment program (the 'Agreement'), which allows tolls to be collected from a SunPass account through an electronic transponder." *Id.* at ¶ 28. The Agreement required Plaintiff "to maintain a prepaid balance, and, at the moment he passed through a lane accepting the electronic payment, SunPass would automatically deduct the required toll charge from his account balance." *Id.* at ¶ 29. Plaintiff's transponder was defective and "FDOT knew or should have known of a defect in the transponder, but failed to properly notify Plaintiff." *Id.* at ¶ 31.

Plaintiff's defective transponder "and/ or any other defect with the SunPass toll-by-plate system caused inaccurate charges to Plaintiff." *Id.* at ¶ 32. Specifically,

33.     When the Vehicle went through toll facilities, instead of applying the transponder fees, SunPass applied[ ] the toll-by-plate fees, which is almost double what is charged.

4

34.     Additionally, hundreds of toll-by-plate charges were inaccurately assessed by the FDOT's SunPass system when the Vehicle did not go through toll facilities.

35.     Plaintiff was issued violations for failure to pay the toll fees.

36.     As a result, Plaintiff is now being collected administrative charges, penalties, and fines in excess of what the individual toll would have cost.

37.     To date, SunPass claims that Plaintiff owes over $4,000 (the 'Debt'), constituted [sic] a combination of purported unpaid tolls and associated penalties.

*Id.* at ¶¶ 33–37. Plaintiff contacted SunPass Customer Service concerning the disputed debt but has been unable to resolve the dispute. *Id.* at ¶¶ 38–41.

On May 19, 2022, Plaintiff's Vehicle was parked "right next to" 10902 NW 83 St, Doral, Florida 33178. *Id.* at ¶ 43. At approximately 9:30 PM, Alpine towed the Vehicle to its Towing Yard. *Id.* at ¶ 44. "No personal notice was given to Plaintiff about improper parking or towing, neither a warning notice was placed in the Vehicle before towing nor was a parking ticket by a law enforcement officer." *Id.* at ¶ 45. "Before impounding the Vehicle, Alpine, employees, agents, or authorized representatives had never been in contact with Plaintiff to discuss any of the described reasons to tow the Vehicle nor did it provide the proper documentation demonstrating the purported debt and Plaintiff's obligation to pay it." *Id.* at ¶ 48.

Plaintiff and his family first approached a receptionist at the Towing Yard, attempting to retrieve the Vehicle. *Id.* at ¶ 46. Another employee,[4] "acting with rude behavior, gestural threats, and derogatory language, in a very aggressive and humiliating manner told Plaintiff that **Alpine would not release [the Vehicle] until Plaintiff had brought evidence of payment of the Debt**." *Id.* at ¶¶ 47, 50 (emphasis added). "[F]eeling threatened by impending harmful contact and fearing for his life and that of his family, [Plaintiff] ran out to the street with his wife, and son and called 911." *Id.* at ¶ 51.

After police intervened, "the [e]mployee agreed to release the Vehicle; nevertheless, **she demanded payment of a $101.00 towing fee**." *Id.* at ¶ 53 (emphasis added). "Against his will, but already very emotionally affected and wanting to get out of this unfortunate situation, **Plaintiff paid the towing fee to get the Vehicle released**." *Id.* at ¶ 54 (emphasis added). "[S]ince Plaintiff was under fear [sic] and had to enter the towing yard where the Vehicle was parked to take it outside, he did not inspect the Vehicle nor did he notice that it had suffered body and mechanical damages during transport and/ or storage." *Id.* at ¶ 55.

## II.    Applicable Legal Standards

Defendants move for dismissal under Federal Rules of Civil Procedure 12(b)(1) and (6). [ECF No. 88, p. 2].

---

[4]    Plaintiff later learned that the name of this employee was Grace (or Greece) Pina. [ECF No. 85, p. 10 n.1].

### A.       Federal Rule of Civil Procedure 12(b)(1)

"A defendant may raise standing objections at the pleading stage by moving to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)." *Volinsky v. Lenovo (United States) Inc.*, No. 8:23-CV-00250-KKM-NHA, 2024 WL 1299315, at *2 (M.D. Fla. Mar. 27, 2024). Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms: (1) "facial attacks" on the complaint, which require the Court to draw all reasonable inferences in favor of the plaintiff to see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction; and (2) "factual attacks," which "challenge the existence of subject matter jurisdiction in fact" and require the Court to consider matters outside the pleadings because no presumption of truthfulness attaches to the plaintiff's allegations. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (internal citations omitted).

"As a threshold procedural matter, a litigant must have standing to invoke the jurisdiction of a federal court." *Taylor v. Suntuity Solar Ltd. Liab. Co.*, No. 8:23-CV-00694-MSS-AEP, 2024 WL 964199, at *3 (M.D. Fla. Mar. 6, 2024). "Standing is the *sine qua non* of federal courts—federal courts only have jurisdiction where there is a 'case' or 'controversy' within the meaning of Article III." *Ramones v. Experian Info. Sols., LLC*, No. 19-62949-CIV, 2021 WL 4050874, at *1 (S.D. Fla. Sept. 4, 2021) (Scola, J.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992)).

The requirements needed to establish constitutional standing are straightforward:

(1) a plaintiff must have suffered an injury in fact; (2) the injury must be causally connected to the defendant's action; and (3) it must be likely that the injury will be redressed by a judgment in the plaintiff's favor. *Lujan*, 504 U.S. at 560–61. Without standing, a plaintiff cannot pursue a claim. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S. Ct. 752, 758, 70 L. Ed. 2d 700 (1982) ("[T]his Court has always required that a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit.").

**B.     Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

"[T]he standard 'simply calls for enough fact to raise a reasonable *expectation* that *discovery* will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 545) (emphasis

supplied). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

On a motion to dismiss, "the court must accept all factual allegations in a complaint **as true** and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (emphasis added). But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth. *See Mamani v. Berzain*, 654 F.3d 1148, 1153–54 (11th Cir. 2011).

## III.   Analysis

Defendants raise myriad reasons for the requested with-prejudice dismissal of the SAC. Plaintiff maintains that he has properly pled causes of action against all Defendants. The parties' arguments are addressed below.

### A.   42 U.S.C. § 1983 Claims (Counts I, IV, V, and VI)

#### 1.   FDOT/Purdue (Counts V and VI)

At the outset, Defendants argue that the Eleventh Amendment bars Plaintiff's civil rights claims against FDOT/Purdue. [ECF No. 88, pp. 3–4].[5] They also argue that Plaintiff's claims against Secretary Perdue in his official capacity are redundant and must be

---

[5]     Defendants' Eleventh Amendment Immunity argument concerns only *monetary damages* against FDOT/Purdue. Defendants raise additional grounds for the dismissal of Counts V and VI as to *all* Defendants. Those arguments are addressed in a later section of this Report and Recommendations.

dismissed because Plaintiff has also sued FDOT. *Id.* at 4 ("It is a well-settled principle of law that when an officer is sued under § 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which the officer is an agent." (citing *Busby v. City of Orlando*, 931 F. 2d 764, 776 (11th Cir. 1991))).

Taveras responds that his injunctive and declaratory relief claims against FDOT/Perdue may proceed under the *Ex parte Young*[6] exception to the Eleventh Amendment. [ECF No. 89, pp. 3–4].

In their reply, Defendants underscore that Eleventh Amendment immunity is asserted by FDOT/Purdue "only as to Counts V and VI of the [SAC] seeking **money damages**." [ECF No. 93, p. 8 (emphasis added)].[7] They state that because "Plaintiff offered no argument in his Response that Defendants FDOT and Perdue are not entitled to Eleventh Amendment immunity as to Counts V and VI seeking money damages" and because "Plaintiff offered no argument in his Response that the official capacity claims against Secretary Perdue are subject to dismissal as being redundant and duplicative of

---

[6]     *Ex parte Young*, 209 U.S. 123, 128, 28 S. Ct. 441, 444, 52 L. Ed. 714 (1908).

[7]     In both Counts V and VI of the SAC, Plaintiff seeks to recover "a. [c]osts and reasonable attorney's fees pursuant to 42 U.S.C. § 1983 for violation of Title 18, U.S.C., Section 241; b. [a]ctual damages; c. [s]tatutory damages; d. [p]unitive damages; [and] e. [s]uch other relief as may be necessary, just, and proper." [ECF No. 85, pp. 22–24 (wherefore clauses)].

the claims asserted against FDOT," they are entitled to the with-prejudice[8] dismissal of those claims. *Id.*

Plaintiff does not address Defendants' argument that the Eleventh Amendment bars section 1983 *monetary* claims against FDOT/Purdue. Moreover, he fails to address Defendants' argument that claims against Secretary Perdue, in his official capacity, are redundant of claims against FDOT.

The failure to address an argument is grounds for deeming a claim abandoned. *See Altare v. Vertical Reality MFG, Inc.*, No. 19-CV-21496, 2020 WL 209272, at *2 (S.D. Fla. Jan. 14, 2020) (on a motion to dismiss, stating that because "[the] [p]laintiff did not respond to [the] argument . . ., consequently, the Court deem[ed] any response waived"); *Five for Ent. S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 4433420, at *14 (S.D. Fla. Aug. 15, 2013) (on cross-summary judgment motions, ruling that "[a] failure to address issues in response to a motion is grounds for finding that the claims have been abandoned").

Moreover, the law supports Defendants' position. "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies. . . . . There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity." *Selensky v. Ala.*, 619 F. App'x

---

[8]     An assertion of Eleventh Amendment immunity attacks this Court's subject matter jurisdiction. Claims dismissed for lack of subject matter jurisdiction should be *without* prejudice. *Jasmin v. Fla.*, No. 23-CV-21063, 2024 WL 665678, at *6 & n.9 (S.D. Fla. Jan. 29, 2024), *report and recommendation adopted*, No. 23-21063-CIV, 2024 WL 664542 (S.D. Fla. Feb. 16, 2024).

846, 848 (11th Cir. 2015) (citations and internal quotation marks omitted). "FDOT [is an]

arm[ ] of the state of Florida and may assert Eleventh Amendment sovereign immunity."

*Am. Contractors Indem. Co. v. Regis S., Inc.*, No. 6:20-CV-1691-ORL-31-EJK, 2020 WL

9073335, at *1 (M.D. Fla. Nov. 18, 2020); *Lee v. Miami-Dade Cnty.*, No. CV 18-21852-CIV,

2018 WL 6436028, at *4 (S.D. Fla. Dec. 7, 2018) (Scola, J.) (dismissing claims against FDOT

because FDOT was immune from suit under the Eleventh Amendment).

"Florida has not consented or waived, and Congress has not abrogated Eleventh

Amendment immunity as to claims for money damages under the Due Process Clause of

the Fourteenth Amendment or 42 U.S.C. § 1983." *Jasmin v. Fla.*, No. 23-CV-21063, 2024

WL 665678, at *6 (S.D. Fla. Jan. 29, 2024), *report and recommendation adopted*, No. 23-21063-

CIV, 2024 WL 664542 (S.D. Fla. Feb. 16, 2024). Therefore, the Eleventh Amendment bars

Plaintiff's § 1983 *monetary* claims against FDOT/Perdue.

Plaintiff's *Ex parte Young* argument does not refute Defendants' contention that the

Eleventh Amendment bars claims for *monetary* damages. *See, e.g., Odebrecht Const., Inc. v.

Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1289 (11th Cir. 2013) (addressing the irreparable

harm prong for obtaining a preliminary injunction and noting that "[the movant] ha[d]

**no monetary recourse** against a state agency like FDOT because of the Eleventh

Amendment[,]" "[t]his includes damages claims against State officials in their official

capacity" and that "*Ex Parte Young* suits like the one brought here **have never been held

to permit retrospective monetary damages**" (emphasis added)).

Lastly, Taveras sued *both* Secretary Purdue (in his official capacity) and FDOT. [ECF No. 85]. "[W]hen a suit is filed against both a governmental entity and the entity's officers and employees in their official capacities, it is appropriate for the Court to dismiss the named individual defendants in their official capacities as 'redundant and possibly confusing to the jury." *Bailey v. Town of Lady Lake, Fla.*, No. 5:05-CV464-OC10GRJ, 2006 WL 2048250, at *3 (M.D. Fla. July 20, 2006) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)). The claims against Secretary Perdue, in his official capacity, are duplicative of Plaintiff's claims against FDOT and should be dismissed.

The Undersigned **respectfully recommends** that the District Court **dismiss** Secretary Perdue from this lawsuit because Plaintiff's claims against him are duplicative of his claims against FDOT and **dismiss** Plaintiff's § 1983 claims (Counts V and VI) against FDOT to the extent Plaintiff seeks to recover monetary damages.

### 2.     Alpine/Saravia (Counts I and IV)

Defendants argue that Plaintiff's section 1983 claims against Alpine/Saravia "should be dismissed inasmuch as [ ] Plaintiff alleges acts of a private or proprietary nature." [ECF No. 88, p. 5 (noting that "'[u]nder color of law' within the meaning of off [sic] 42 U.S.C. [§] 1983 refers to misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law and may not include acts of a private or proprietary nature" (citing *Home Ins. Co. v. Leinart*, 698 S.W.2d 335 (Tenn. 1985))]. They state that "[i]t is not the role of a federal court under

a federal civil rights statute to remedy violations of state law, if any, as alleged by this Plaintiff against Alpine and [ ] Saravia to the extent that Alpine is authorized to tow vehicles parked on private properties." *Id.* They also challenge Plaintiff's standing to bring a section 1983 claim against these Defendants, based on the alleged lack of state action. *Id.* at 7. These arguments will be addressed in turn.

### a.  State action

Defendants contend that "[i]t is [ ] not enough for Plaintiff merely to allege that Defendants Alpine and [ ] Saravia acted under color of law **without alleging that they acted jointly with the state or its agents**." [ECF No. 88, p. 6 (emphasis added)]. According to Defendants, it is not enough for Plaintiff "to allege that removal of vehicles is traditionally the exclusive prerogative of the state, since Florida Statutes provide for removal of vehicles from private property where no governmental agency or power is implicated." *Id.* at 7(citing Fla. Stat. § 715.07). Thus, Defendants argue that "Plaintiff's 1983 actions fail as to [Alpine/Saravia] for want of an allegation of joint action with a state agency." *Id.* at 14.

Plaintiff argues that he "has alleged and demonstrated that Alpine [ ] and [ ]. Saravia were indeed acting under color of state law" and notes (without citation to any paragraphs) that the SAC: (1) outlines instances where Alpine [ ] under the direction of [ ] **Saravia** impounded and retained the Vehicle under allegations that are only the prerogative of a law enforcement unit"; (2) "contains allegations that Alpine [ ] and [ ]

Saravia were **beneficiaries of state-granted privileges and powers** concerning vehicle towing, which suggests a significant state involvement in their activities"; and (3) "explicitly alleges that Alpine [ ] and [ ] Saravia **acted in concert with the FDOT/Sun[P]ass in towing and impounding [ ] Plaintiff's vehicle**." [ECF No. 89, pp. 4–5 (emphasis added)].

In their reply, Defendants contend that "Plaintiff has failed to connect the dots and indicate how [ ] Alpine Towing and [ ] Saravia's[ ] actions in this case rise to the level of acting under color of state law." [ECF No. 93, p. 3]. They maintain that "[s]imply indicating that they have previously impounded cars and have a contract to tow vehicles is not sufficient to indicate they were acting under color of state law in regard to their actions in this matter." *Id.*

The Undersigned agrees with Defendants that Plaintiff has failed to adequately allege that Alpine/Saravia acted under color of state law. "The 'under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" *Nelson v. Brieda*, No. 3:22-CV-1265-HES-LLL, 2022 WL 18232635, at *2 (M.D. Fla. Nov. 29, 2022), appeal dismissed, No. 22-14294-J, 2023 WL 2640014 (11th Cir. Mar. 3, 2023) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

The Eleventh Circuit "employ[s] three distinct tests in determining whether the actions of a private entity are properly attributed to the state": "'(1) the public function

test; (2) the state compulsion test; and (3) the nexus/joint action test.'" *Wilson v. Dollar-Thrifty Auto Grp.-S. Fla Transp.*, 286 F. App'x 640, 641 (11th Cir. 2008) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003)).

These tests are as follows:

> The **public function test** limits state action to instances where private actors are performing functions traditionally the exclusive prerogative of the state. The **state compulsion test** limits state action to instances where the government has coerced or at least significantly encouraged the action alleged to violate the Constitution. The **nexus/joint action test** applies where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise.

*Id.* (emphasis added). "Only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).

Plaintiff's <u>first</u> contention is that Alpine, acting under Saravia's direction, impounded and retained Plaintiff's Vehicle. [ECF No. 89, p. 4]. Saravia is a private citizen, not a state actor. The SAC alleges that he is the "corporate president of Alpine who ran the day-to-day operations of Alpine for the relevant time period." [ECF No. 85, ¶ 11]. There are no allegations that Saravia is an employee of any local, municipal, or state government.

The fact that Saravia (a private citizen) directed Alpine to tow Plaintiff's Vehicle does not establish state action. "Action by a private party pursuant to [a] statute, without something more, [is] not sufficient to justify a characterization of that party as a state

actor." *Phillips v. Life Prop. Mgmt. Servs., LLC*, No. 21-11350, 2021 WL 5444921, at *2 (11th

Cir. Nov. 22, 2021) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939, 102 S. Ct. 2744,

2754, 73 L. Ed. 2d 482 (1982) (alterations in *Phillips*)); *see also Hall v. Deas*, No. 22-CV-62125-

RAR, 2022 WL 17176847, at *2 (S.D. Fla. Nov. 23, 2022) (finding no state action where a

private individual took it upon herself to falsely report to the police that the plaintiff was

involved in a robbery and later committed perjury to further the prosecution).

Plaintiff's <u>second</u> contention is that "Alpine [ ] and [ ] Saravia were **beneficiaries**

of state-granted privileges and powers concerning vehicle towing" and that this fact

"suggests a significant state involvement in their activities" [ECF No. 89, p. 5 (emphasis

added)]. The SAC alleges that "Alpine is not a law enforcement agency with independent

authority to enforce the law; however, **it is authorized to tow vehicles parked on private**

**properties under Fla. Stat. § 715.07, and Miami-Dade County Ordinance, Article III**."

[ECF No. 85, ¶ 10 (emphasis added)]. But the mere fact that a statute or ordinance allows

a private entity to do something does not convert every private entity which is exercising

its right under that law into a state actor.

Moreover, it is simply not true that towing and impounding vehicles is exclusively

a public function. In *Phillips v. Life Prop. Mgmt. Servs., LLC*, the Eleventh Circuit

determined that the trial court did not err in dismissing the plaintiff's complaint for

failure to state a claim under section 1983. No. 21-11350, 2021 WL 5444921, at *2 (11th Cir.

Nov. 22, 2021). In that case, "[the plaintiff] allege[d] that Quick Drop, **a private company**,

**towed [the plaintiff]'s car from private property** pursuant to the terms of [the plaintiff]'s lease agreement with the private property owner. **[The fact] [t]hat the relevant lease provision was meant to ensure compliance with Georgia law regarding vehicle registration, . . . was not sufficient to transform the private actors into state actors**." *Id.* (emphasis added).

Additionally, the fact that "SunPass, its employees, agents, or authorized representatives, with deliberate indifference to the consequences, **established and maintained a policy, practice, or custom . . . to share to [sic] towing companies alleged toll debts** of vehicle owners" [ECF No. 85, ¶ 18 (emphasis added)] -- the so-called "SunPass Policy" -- does not transform Alpine/Saravia into state actors. A state entity simply sharing information about unpaid tolls with private companies is not enough to convert these private companies into state actors.

In *Oldaker v. Giles*, the court noted that "[t]he mere existence of a contract between a State entity and a private actor [did] not mean that every action taken by that private actor [could] be attributed to the state." No. 7:20-CV-224 (WLS), 2024 WL 1241359, at *11 (M.D. Ga. Mar. 22, 2024); *see also Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 814, 139 S. Ct. 1921, 1931, 204 L. Ed. 2d 405 (2019) ("[T]he Court has long held, the fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function."). Here, there is not even an allegation of a contract

between FDOT/SunPass (or any other state entity) and Alpine. According to the SAC, SunPass (as a matter of "policy, practice, or custom") simply shares information about "toll debts" with towing companies. [ECF No. 85, ¶¶ 18–19].

The <u>third</u> assertion is that "Alpine [ ] and [ ] Saravia **acted in concert with the FDOT/Sun[P]ass in towing and impounding [ ] Plaintiff's vehicle**." [ECF No. 89, p. 6 (emphasis added)]. But there are no *actual* facts alleged which show a concerted effort between FDOT (or SunPass) and Alpine to tow Plaintiff's Vehicle.

As noted above, the SAC alleges that SunPass as a matter of "policy, practice, or custom" *shares* "toll debts of vehicle owners" with towing companies (including Alpine) and that FDOT is aware that "predatory towing companies are using the alleged toll debt to defraud citizens by impounding and retaining their vehicles." [ECF No. 85, ¶¶ 18–22]. It further alleges that Alpine towed Plaintiff's Vehicle, and, when Plaintiff sought to retrieve his Vehicle, an Alpine employee (at least initially) refused to release Plaintiff's Vehicle until Plaintiff showed proof of payment of the outstanding tolls/penalties. *Id.* at ¶¶ 44, 46–55.

There are *no* allegations that FDOT or SunPass instructed Alpine to tow Plaintiff's Vehicle or that the Alpine employee who demanded proof that Plaintiff had satisfied all outstanding tolls/penalties did so at the behest of FDOT or SunPass. To the extent that an Alpine employee took it upon herself to initially demand that Plaintiff show proof he had paid all outstanding "toll debt," he has not alleged a state action or a constitutional

violation. "[T]he Constitution as a rule protects people from the state, not from **each other.**" *Beyer v. Vill. of Ashwaubenon*, 444 F. App'x 99, 101 (7th Cir. 2011) (emphasis added).

In *Hutchins v. Billy Clark Bail Bonds, Inc.*, for instance, the court found that bail bondsmen were not state actors under section 1983 when they "traveled to Georgia, apprehended [the plaintiff], and transported him back to Florida." No. 3:22CV893/TKW/ZCB, 2022 WL 17812456, at *4 (N.D. Fla. Nov. 8, 2022), *report and recommendation adopted*, No. 3:22-CV-893-TKW/ZCB, 2022 WL 17811967 (N.D. Fla. Dec. 19, 2022), *appeal dismissed*, No. 23-10077-A, 2023 WL 2847296 (11th Cir. Feb. 8, 2023). The court noted that the plaintiff failed to "allege that any law enforcement officers assisted with the apprehension and transport." *Id.* Instead,

> the Bail Bondsmen acted unilaterally and in their private capacities when they took [the] [p]laintiff into custody and transported him to Florida. The mere fact that a law enforcement officer (Deputy Howton) received custody of [the] [p]laintiff after the Bail Bondsmen apprehended him and returned him to Florida does not turn the Bail Bondsmen into state actors for purposes of § 1983. There are no allegations that the Bail Bondsmen were acting at the behest of or in concert with Deputy Howton when they apprehended and transported Plaintiff from Georgia to Florida. *See* [*Landry v. A Able Bonding, Inc.*, 75 F.3d 200, 204-05 (5th Cir. 1996)] (bail bondsman was not state actor when he conducted arrest of individual without assistance from law enforcement); *see also* [*Green v. Abony Bail Bond*, 316 F. Supp. 2d 1254, 1261 (M.D. Fla. 2004)] (bail bondsman was not a state actor where he received no instructions, directions, or aid from the state in pursuing and apprehending the plaintiff). Because state action is an essential element of a § 1983 claim, Plaintiff's § 1983 claims against Defendants Billy Clark Bail Bonds, Inc., Billy Clark, Matt McKeehan, and Phillip Kichler should be dismissed for failure to state a claim.

*Id.* (emphasis added).

Similarly here, there are no allegations that FDOT, SunPass, or any state entity participated in Alpine's towing of Plaintiff's Vehicle or in the decision of the Alpine employee to (initially) insist that Plaintiff show proof he had satisfied his outstanding tolls/penalties before releasing the Vehicle.

Even when construed liberally, the SAC fails to allege that Alpine/Saravia acted under color of state law.

### b.      Standing

Defendants also argue that because "Plaintiff [ ] does not allege [that the Vehicle] was **towed in joint action with the state or its agents**," "[he] has failed to establish standing to bring [a § 1983] claim." [ECF No. 88, p. 7].

Plaintiff responds that he has standing to bring a section 1983 claim, noting that he has "undeniably suffered a direct and personal injury stemming from the actions of [ ] Defendants," including "financial expenses, inconvenience, and the loss of the use of [his] [V]ehicle." [ECF No. 89, p. 7]. He further states that "there is a clear and substantial connection between the Plaintiff's injury and the conduct complained of in the [SAC]" because "Alpine [ ], [ ] Saravia, and the [FDOT], acting through their agents, participated in towing and impounding the Plaintiff's [V]ehicle." *Id.* at 7.

In their reply, Defendants state that Plaintiff "fails to rebut the standing argument," noting that the Vehicle was removed from *private* property. [ECF No. 93, p. 3 (emphasis added)]. They cite to paragraph 43 of the SAC. *Id.* However, this paragraph

merely pleads the approximate ("right next to")[9] location of Plaintiff's Vehicle at the time it was towed; it does not allege (one way or the other) whether the Vehicle was parked on private or public property.[10]

Defendants state (without record citation) that "Plaintiff's vehicle was towed from private property -- a condominium complex known as Promenade Shores of Doral -- at the request of a private corporation -- Allied Property Group, Inc., the property manager of Promenade Shores." [ECF No. 88, p. 10]. But these are "facts" that are not alleged in the SAC. At the motion to dismiss stage, these facts are not before the Court. *Figueroa v. Santa Rosa Cnty. Sheriff's Dep't*, No. 3:23CV3903-MW/ZCB, 2024 WL 1131272, at *5 (N.D. Fla. Mar. 4, 2024).

They also state that "[t]he removal from private property is further buttressed by the stipulation for dismissal between erstwhile Defendant ALLIED PROPERTY GROUP, INC. and [ ] Plaintiff. ECF No. 22." [ECF No. 93, p. 3 n.2 (capitalization in original)]. This stipulation of dismissal is a *pro forma* document with *no* mention of the Vehicle or its towing location and Defendants do not otherwise elaborate on how this garden-variety stipulation of dismissal "buttresse[s]" their point.

---

[9]     Paragraph 43 alleges that "[o]n May 19, 2022, Plaintiff properly parked the Vehicle **right next to** 10902 NW 83 St, Doral[,] FL 33178." [ECF No. 85, ¶ 43 (emphasis added)].

[10]     This is an imprecise description because the Vehicle could have been parked on the swale or the street (public property) and still been "right next to" this location.

Moreover, the relevant inquiry is not *where* Plaintiff's Vehicle was located at the time it was towed but whether a private business (Alpine/Saravia) acted in concert with a state entity such that it can be said that it was acting under the color of state law.

Insofar as Defendants seek to dismiss Plaintiff's section 1983 claims against Alpine/Saravia on the ground that Taveras has failed to "allege [that the Vehicle] was **towed in joint action with the state or its agents**," [ECF No. 88, p. 7 (emphasis added)], that argument was already addressed above. To reiterate, the state's involvement (as pled in the SAC) was limited to sharing information about "toll debts" with towing companies. To the extent that FDOT (or SunPass) set off the chain of events that resulted in the towing of Plaintiff's Vehicle, its participation in the matter started and ended with SunPass sharing "toll debts" with towing companies. There are no facts showing that Alpine acted in conjunction with the state when it decided to tow Plaintiff's Vehicle or when its employee insisted on Plaintiff showing proof of satisfying the "toll debts" as a condition for releasing the Vehicle.

In any event, and for the reasons discussed above, Plaintiff has failed to adequately plead that Alpine/Saravia acted under color of state law. For this reason, the Undersigned **respectfully recommends** that the District Court **dismiss** Plaintiff's § 1983 claims (Counts I, IV, V, and VI) against Alpine/Saravia.

### 3.      All Defendants (Counts V and VI)

Counts V and VI seek to assert claims against all Defendants for violating 18 U.S.C. § 241. [ECF No. 85, ¶¶ 116–27]. Defendants argue that "Plaintiff's claims arising out of 18 U.S.C. §§ 241 and 242[11] must be dismissed because there is no private cause of action arising from these criminal statutes." [ECF No. 88, p. 8].

Plaintiff argues that "Defendants have missed the mark" because "[s]ection 1983 provides a crucial mechanism for individuals to seek redress when their constitutional and statutory rights are violated under color of state law." [ECF No. 89, p. 11]. According to Plaintiff, he has "allege[d] a conspiracy among [ ] Defendants to deprive him of his constitutional rights, **specifically his right to due process**" thus "Defendants' actions, if proven, represent a clear violation of federal law, with the intent to violate Plaintiff's due process rights." *Id.* (emphasis in original).

Plaintiff contends that his section 1983 claims are "firmly grounded in established legal principles" and notes that "Courts have consistently recognized the viability of Section 1983 claims in cases involving violations of federal law and constitutional rights." *Id.* at 89 (citing *Waybright v. Frederick County, MD*, 528 F.3d 199, 207, 208 (4th Cir. 2008) and *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006)). But neither case Plaintiff cites

---

[11]      The SAC does not invoke 18 U.S.C. § 242. It cites only § 241. *See* [ECF No. 85, ¶¶ 117, 118, 123, 124, 126 and pp. 21 (title), 23 (title), 24 (wherefore clause)].

involves the violation of a *criminal* statute as the underlying predicate of a section 1983 claim.

In *Waybright*, the parents of a deceased firefighter recruit brought (among other claims) a section 1983 claim alleging a due process violation. 528 F.3d at 201. There is no mention of any criminal statute in that decision. *Anderson* involved the assault of a motorist by a police officer. 451 F.3d at 1065. It similarly makes no mention of a criminal statute.

On the other hand, there are no shortage of cases dismissing section 1983 claims premised on criminal statutes. *See, e.g.*, *Andrew Corpus v. Depass*, No. 2:18-CV-665-FtM-29NPM, 2020 WL 4260980, at *2 (M.D. Fla. July 24, 2020) ("[The] [p]laintiff does not have standing to bring a claim for 'Conspiracy Against Rights' under 18 U.S.C. § 241 and 'Deprivation of Rights' under 18 U.S.C. § 242, because neither statute provides a private cause of action. . . . **Because the statutes confer no right to [the] [p]laintiff, he cannot base a § 1983 claim on defendants allegedly violating either**." (internal citations omitted; emphasis added)).

The Undersigned agrees with Defendants that Plaintiff, a private citizen, cannot seek to enforce criminal statutes. "[Section 241 is a] criminal statute[ ] and cannot be the basis of a civil lawsuit." *Albertini v. San Diego Cnty. Sheriff's Dep't*, No. 3:24-CV-00284-JES-SBC, 2024 WL 1078244, at *3 (S.D. Cal. Mar. 12, 2024); *see also McGee v. Nissan Motor Acceptance Corp.*, 619 F. App'x 555 (7th Cir. 2015) (noting that "[the plaintiff] d[id] not

state claims under § 241 or § 1341; both provisions are federal criminal statutes that do

not provide a private right of action" (collecting cases)).

Because Plaintiff cannot bring a cause of action premised on a criminal statute, his

claims in Counts V and VI, *to the extent they are predicated on a criminal statute*, must

be dismissed.

But Plaintiff also alleges due process violations:

119.    Plaintiff has a constitutional right to **due process**, secured by the **Fourteenth Amendment** to the U.S. Constitution.

120.    Acting under color of law, Defendants conspired -- by word or conduct -- to oppress, threaten, and intimidate Plaintiff in the free exercise or enjoyment of his constitutional right to due process.

121. As a direct and proximate cause of Defendants' conspiracy, and conduct in violation of Plaintiff's Civil Rights, Plaintiff suffered, during and after the event at issue, damages to his vehicle, fear, humiliation, distress, mental anguish, and other emotional and mental harm.

*** 

125.    Under the **Fifth Amendment** to the U.S. Constitution Plaintiff has a right to acquire, use, and dispose of property.

126.    In violation of 18 U.S.C. § 241[,] Defendants, acting under color of state law, conspired, by word or conduct, to injure, oppress, threaten, or intimidate Plaintiff in the free exercise or enjoyment of his constitutional right to property.

127.    As a direct and proximate cause of Defendants' conspiracy, and conduct in violation of Plaintiff's Civil Rights, Plaintiff suffered, during and after the event at issue, damages to his vehicle, fear, humiliation, distress, mental anguish, and other emotional and mental harm.

[ECF No. 85, ¶¶ 119–121, 125–27 (emphasis added)].

26

"The Fifth Amendment of the Constitution prevents the federal government from taking private property without due process. . . . The Fifth Amendment—applied to the states by the Fourteenth Amendment—requires an allegation of state action to support a claim of unconstitutional deprivation of private property." *Cox v. Bank of Am. Corp.*, No. 21-CIV-61109-RAR, 2021 WL 5631774, at *6 (S.D. Fla. Dec. 1, 2021).

These claims must be dismissed because, as discussed above, the SAC fails to allege facts which would establish that Alpine/Saravia were *acting under color of state law* when they towed the Vehicle or when an Alpine employee initially demanded proof that Plaintiff had satisfied his "toll debt."

Counts V and VI also fail as to FDOT (the Undersigned has already determined that claims against Purdue are duplicative). Both counts are premised on Defendants supposedly conspiring to "oppress, threaten, and intimidate Plaintiff in the free exercise or enjoyment of his constitutional right to due process" or "injure, oppress, threaten, or intimidate Plaintiff in the free exercise or enjoyment of his constitutional right to property." [ECF No. 85, ¶¶ 120, 126]. But there are no facts in the SAC supporting a conspiracy between FDOT (or SunPass) and Alpine/Saravia to tow Plaintiff's Vehicle.

At most, SunPass has a "policy, practice, or custom" of sharing with towing companies the "toll debts of vehicle owners" and FDOT/Perdue knew or should have known that:

> **predatory towing companies like . . . Alpine[ ] use this information**, and through intimidation, threats, and lies, including posing as law

27

enforcement or executing acts of the exclusive prerogative of law enforcement, impound vehicles, scares [sic] victims into paying often non-existent or questionable debts, to retain the vehicles for longer period to charge more fees.

*Id.* at 18–19 (emphasis added).

The only allegations in the SAC of anyone threatening Plaintiff concern the Alpine employee:

> 49.    Plaintiff asked the Employee to release the Vehicle, arguing that the towing and impoundment of the Vehicle were illegal.
>
> 50.    Instead of negotiating the release of the Vehicle, **the Employee, acting with rude behavior, gestural threats, and derogatory language, in a very aggressive and humiliating manner told Plaintiff** that Alpine would not release it until Plaintiff had brought evidence of payment of the Debt.
>
> 51.    Plaintiff, feeling threatened by impending harmful contact and fearing for his life and that of his family, ran out to the street with his wife, and son and called 911. Accordingly, several police officers were dispatched and arrived at the Towing Yard.

[ECF No. 85, ¶¶ 49–51 (emphasis added)]. But, as discussed above, the actions of the Alpine employee were those of a *private* individual. There are no alleged facts (only conclusory allegations) in the SAC which would establish that FDOT (or SunPass) worked in concert with Alpine/Saravia to tow Plaintiff's Vehicle or that FDOT had any involvement in the Alpine employee threatening Plaintiff.

In sum, Plaintiff has not alleged a section 1983 claim in Counts V and VI because: (1) a private cause of action cannot be premised on a violation of a criminal statute; and (2) to the extent these claims are based on due process

violations, Plaintiff failed to allege any facts which would show that FDOT made any threats to Plaintiff or that Alpine/Saravia or the Alpine employee who threatened Plaintiff and demanded proof of payment of the "toll debt" was acting under color of state law.

For these reasons, the Undersigned **respectfully recommends** that the District Court **dismiss** Counts V and VI as to all Defendants.

### B. Injunctive Relief Against All Defendants (Count IV)

Defendants also seek to dismiss Plaintiff's injunctive relief claim (Count IV). [ECF No. 88, pp. 9–12]. In Count IV, Plaintiff seeks an Order:

> **enjoining and restraining Defendants** and their respective directors, employees, heirs, agents, successors in interest, assignees, representatives, and those persons in active concert or participation with them, **from implementing the SunPass Policy against Plaintiff in relation to the Debt**, including placing and enforcing a registration stop in the Vehicle or any other vehicle owned by Plaintiff, impounding or seizing the Vehicle, until the policies, practices, and procedures of this conduct comply with all constitutional requirements.

[ECF No. 85, p. 21 (wherefore clause) (emphasis added)].

They contend that Plaintiff's injunctive relief claim must be dismissed because Plaintiff cannot show a likelihood of success on the merits, given that the so-called SunPass Policy does not exist. [ECF No. 85, pp. 9–10]. They also note that Alpine/Saravia would not be able to exert any control over this policy, even if it existed. *Id.* at 10; *see also id.* at 12 ("Defendants, Alpine Towing and Larry J. Saravia, have no control, power or influence over the alleged SunPass 'policy,' and none is alleged by the Plaintiff.").

29

Defendants add that "Plaintiff's vehicle was towed from private property – a condominium complex known as Promenade Shores of Doral – at the request of a private corporation – Allied Property Group, Inc., the property manager of Promenade Shores." *Id.* at 10. Thus, Defendants contend there was no state action. *Id.*

Alternatively, they argue, in a footnote,[12] that even if there was state action, "the temporary deprivation of possession or use of a vehicle does not violate due process where a post-deprivation remedy exists" and in the instant case, "the remedy provided by [Fla. Stat. §] 713.78 (5)(a) satisfies due process." *Id.* at 10 n.1.

They also contend that "Plaintiff has not alleged sufficient grounds for injunctive relief" because "[he] failed to allege, for example, that either FDOT or Alpine (or their principal officers, Perdue and Saravia) acted in bad faith and thus Plaintiff is not entitled to injunctive relief." [ECF No. 88, p. 11 (citing *Wilson v. Thompson*, 638 F.2d 799 (5th Cir. 1981)].[13]

Defendants further state that the SAC contains no allegations that Defendants would continue to seize Plaintiff's vehicle. They note that in paragraph 107 of the SAC

---

[12]    "[A]ddressing legal arguments in footnotes is an incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022).

[13]    In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

"Plaintiff alleges in the alternative that the Defendants acted singly, even though joint action with a state agency is a necessary element of a 1983 action." *Id.* at 11. Defendants thus reason that because "Plaintiff fails to state a claim for injunction upon which relief can be granted as to [ ] FDOT and Perdue[,]" he also "likewise fails to state a claim for injunction upon which relief can be granted as to Alpine and Saravia as private parties not working in concert with the state agency." *Id.*

They argue that Plaintiff's injunctive relief claim is also lacking because he asserts irreparable injury only in conclusory terms and "fails to indicate how money damages will not adequately compensate [him] for the alleged prejudice that he may have suffered." *Id.* at 11–12.

Plaintiff contends that the SAC "sets forth compelling reasons justifying the necessity of injunctive relief." [ECF No. 89, p. 13]. He further states that he meets the standard for a preliminary injunction because "[he] has alleged ongoing violations of federal rights, supported by the detailed description of [ ] Defendants' actions" and the SAC "articulates a well-founded concern of future harm, as the alleged unconstitutional practices by [ ] Defendants are not isolated incidents but rather part of a pattern of behavior that threatens to persist absent judicial intervention." *Id.* at 14. He further states that the SAC "does not merely rely on speculation but provides factual assertions suggesting that [ ] Defendants' actions are driven by bad faith or improper motives." *Id.*

In their reply, Defendants state that Plaintiff fails to respond to their arguments. [ECF No. 93, p. 7]. They note that Plaintiff does not rebut the assertion that Alpine Towing/Saravia had "no ability to direct or control the SunPass Policy" (which Defendants dispute existed). [ECF No. 93, p. 7]. As to FDOT/Perdue, they note that Plaintiff did not "rebut the argument that no policy exists related to towing vehicles as a means of collecting unpaid toll charges and, even if such a policy did exist, [ ]the **temporary deprivation of possession or use of a vehicle does not violate due process** where a post-deprivation remedy exists." *Id.* (emphasis added). They argue that because Fla. Stat. § 713.78(5)(a) satisfies due process, it would be futile to issue an injunction. *Id.*

Defendants quibble with the existence of the SunPass policy. But the SAC adequately pleads the existence of this "policy, practice, or custom." [ECF No. 85, ¶ 18]. It may well be that, either at summary judgment or at trial, Defendants would be able to show that the purported SunPass policy is a fabrication, but, at the motion to dismiss stage, the Court "must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff." *Dusek*, 832 F.3d at 1246.

Nonetheless, Plaintiff's claim for injunctive relief (Count IV) is due to be dismissed because it is premised on a section 1983 violation and, for the reasons discussed above, Plaintiff has failed to state a section 1983 claim against any Defendant. *See Porter v. Sgt. Derrell Thigpen*, No. CV 622-057, 2024 WL 1243005, at *14 (S.D. Ga. Mar. 22, 2024) (on motions to dismiss, stating that "[b]ecause [the] [p]laintiffs failed to state a claim upon

which relief may be granted as to all their § 1983 claims, [the] [p]laintiffs' request for declaratory and injunctive relief is denied to the extent they request such relief because [the] [d]efendants violated their rights under the federal Constitution").

Thus, the Undersigned **respectfully recommends** that the District Court **dismiss** Counts IV as to all Defendants.

### C.      FDCPA (Count II)

Defendants also seek to dismiss Plaintiff's FDCPA claim. They argue that this claim must be dismissed because "Plaintiff has failed to allege basic, necessary facts to state a claim for relief under the . . . Act." [ECF No. 88, p. 12]. They state that:

> Plaintiff has failed properly to allege that either ALPINE TOWING, INC. is a 'debt collector,' *i.e.*, any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another.

[ECF No. 88, pp. 12–13 (citing 15 U.S.C. § 1692a(6))]. They note that Plaintiff alleges Alpine "**operates a towing company and tow and storage yard**[.]" *Id.* at 13 (citing [ECF No. 85, ¶ 10] (emphasis added)).

They also note that there is no allegation that Alpine, "in the process of collecting its own debts, used any other name than its own which would indicate that a third person is collecting or attempting to collect such a debt," and that "**Plaintiff alleges only that he paid the towing charge**, not some debt of any other party, public or private." *Id.*

(emphasis added). Defendants contend that this claim fails because "Alpine only collected, and Plaintiff only paid, the towing charge[.]" *Id.* at 14 (capitalization omitted).

Defendants also dispute that Plaintiff has alleged harassment:

> Plaintiff fails to allege harassment under the [FDCPA], **by a single act of collecting a tow removal fee which was owed to ALPINE** not to a third party, which Plaintiff paid in the presence of one or more police officers called by Plaintiff himself. . . . It has been held that even if 48 letters allegedly sent to a debtor by an actual debt collector over a period of eight months referring to the same debt, the mailing of six letters per month would not be "harassing." *Masuda v. Thomas Richards & Co.*, 759 F.Supp.1456,1465–66 (C.D. Cal. 1991).

*Id.* at 13–14 (emphasis added).

Plaintiff contends that the SAC "sufficiently sets forth a viable claim under the FDCPA[.]" [ECF No. 89, p. 9]. He states (without citation to any numbered paragraphs) that the SAC "articulates a clear and concise allegation that Alpine [ ], the entity responsible for towing and impounding [ ] Plaintiff's [V]ehicle, engaged in practices that fall within the purview of the FDCPA" by "engag[ing] in debt collection activities without the requisite authorization or legal basis, resulting in harm to [ ] Plaintiff." *Id.* He argues that the allegations in the SAC are sufficient to put Defendants on notice of the alleged FDCPA violations and he is not required to provide extensive factual detail at this juncture. *Id.* at 10.

In their reply, Defendants reiterate that "in Plaintiff's **single** encounter with ALPINE TOWING, the towing company only collected its own towing charge not any

34

third-party's debt" and that "the event described . . . was neither abusive nor deceptive." [ECF No. 93, p. 5 (emphasis added)].

Defendants contend that because the SAC alleges that Alpine operates a towing company and storage yard, Plaintiff has failed to properly allege that Alpine is a debt collector or an entity that regularly collects or attempts to collect debts of another. [ECF No. 88, pp. 12–13 (citing 15 U.S.C. § 1692a(6))].

But the SAC includes additional allegations. It asserts that an Alpine employee (at least initially) refused to release Plaintiff's Vehicle without proof that Plaintiff had paid the tolls/penalties (*i.e.*, the debt owed to another, the state of Florida). [ECF No. 85, ¶¶ 47, 50]. The SAC also alleges that:

> predatory towing companies **like Defendant, Alpine**, use [information about the toll debts of vehicle owners provided by SunPass], and through intimidation, threats, and lies, including posing as law enforcement or executing acts of the exclusive prerogative of law enforcement, impound vehicles, **scares [sic] victims into paying often non-existent or questionable debts, to retain the vehicles for longer period to charge more fees**.

*Id.* at ¶ 19 (emphasis added).

Moreover, Defendants' motion characterizes the Debt as the ***towing*** charge.[14] The SAC clearly defines the "Debt" in question as "constitut[ing] a combination of purported *unpaid tolls and associated penalties*." [ECF No. 85, ¶ 37 (emphasis added)]. The SAC

---

[14]     *See* [ECF No. 88, p. 14 ("The [FDCPA] claim leveled against ALPINE and SARAVIA fails because, by Plaintiff's own allegations, ALPINE only collected, and Plaintiff only paid, the **towing charge**[.]" (emphasis added; capitalization in original))].

also alleges that, at least initially (before police became involved), one of Alpine's employees refused to release Plaintiff's Vehicle unless Plaintiff showed proof of payment of the outstanding tolls. *Id.* at ¶¶ 47 ("Another Alpine employee (the 'Employee') . . . **told Plaintiff that the vehicle would [not] be released because it had unpaid tolls**. According to the Employee, **the Vehicle would not be released until Plaintiff had brought evidence [sic] of having paid the purported debt**." (emphasis added)); 50 ("[T]he Employee, acting with rude behavior, gestural threats, and derogatory language, in a very aggressive and humiliating manner told Plaintiff that **Alpine would not release it until Plaintiff had brought evidence of payment of the Debt**." (emphasis added)).

Thus, the SAC does not simply allege (as Defendants contend) only an attempt by Alpine to collect its *own* debt (the towing charge). Construed liberally, it also alleges an attempt by an Alpine employee to collect the debt of *another* (the outstanding tolls and penalties purportedly owed to the state of Florida).

Nonetheless, the Undersigned agrees with Defendants that Plaintiff's FDCPA claim is due to be dismissed. "Congress passed the FDCPA to protect consumers from deceptive and harassing debt collection practices." *Valenzuela v. Medicredit, Inc.*, No. 6:20-CV-124-ORL-37GJK, 2020 WL 13104699, at *2 (M.D. Fla. Dec. 15, 2020) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). To establish a violation of the FDCPA, "a plaintiff must prove: (1) [ ]he has been the object of collection activity arising out of consumer debt; (2) the defendant is a debt collector as defined by the

FDCPA; and (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Ambroise v. Am. Credit Adjusters, LLC*, No. 15-22444-CIV, 2016 WL 6080454, at *2 (S.D. Fla. Mar. 22, 2016) (citations omitted).

"At the motion-to-dismiss stage, [a] [p]laintiff 'must plausibly allege sufficient factual content to enable the court to draw a reasonable inference that [the defendant] meets the FDCPA's definition of 'debt collector' and is thus subject to the [FDCPA]." *Schooley v. Option One Mortg. Corp.*, No. 5:21-CV-219-AW/MJF, 2022 WL 3703184, at *5 (N.D. Fla. June 17, 2022) (quoting *Kurtzman v. Nationstar Mortg. LLC*, 709 F. App'x 655, 658–59 (11th Cir. 2017)).

Here, the SAC alleges both that Alpine is a "towing company and tow and storage yard" and that Alpine/Saravia "are 'debt collectors' within the meaning of FDCPA, 15 U.S.C. § 1692a(6), by engaging in the enforcement of other's security interests." [ECF No. 85, ¶¶ 10, 80]. But a "plaintiff cannot merely refer to the defendant as a debt collector without any factual support because '[s]uch an assertion is not only void of factual content but also a legal conclusion that the Court cannot consider" on a motion to dismiss. *Olufemi v. Exclusive Ass'n Mgmt., Inc.*, No. 122CV01391SEGJEM, 2022 WL 18780930, at *6 (N.D. Ga. Dec. 14, 2022), *report and recommendation adopted sub nom. Olufemi v. Exclusive Ass'n Mgmt.*, No. 1:22-CV-1391-SEG, 2023 WL 2471384 (N.D. Ga. Mar. 7, 2023), *aff'd*, No. 23-10752, 2024 WL 710547 (11th Cir. Feb. 21, 2024).

The Undersigned agrees with Defendants that Plaintiff has failed to allege facts that plausibly show that Defendant is a "debt collector" under the FDCPA because the SAC does not plausibly show that Alpine/Saravia: (1) "use[ ] *any instrumentality of interstate commerce or the mails* in any business the principal purpose of which is the collection of any debts;" or (2) "*regularly* collect[ ] or attempt[ ] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6) (emphasis added).

There are no allegations concerning Alpine/Saravia's use of any instrumentality of interstate commerce in its purported business of collecting debts. In *Cooley v. Ocwen Loan Servicing, LLC*, the Eleventh Circuit determined that "the [district] court correctly found that [the plaintiff] failed to demonstrate that [the defendant] was a debt collector for the purposes of the FDCPA, because he did **not allege facts demonstrating that [the defendant] used any instrumentality of interstate commerce in the collection of debt**." 729 F. App'x 677, 681 (11th Cir. 2018) (emphasis added); *see also Horton v. HSBC Bank*, No. 1:11-CV-3210-TWT, 2013 WL 2452273, at *8 (N.D. Ga. June 5, 2013) (allegations that each defendant "[was] a corporation that uses instruments of interstate commerce to facilitate the opening of accounts and collection of debts owed" warranted dismissal because "[r]eciting the statutory definition without offering any facts in support is insufficient to plausibly allege that [the] [d]efendants qualify as debt collectors under the FDCPA").

Additionally, while the SAC alleges that Alpine attempted to collect a debt (on behalf of Florida) from Plaintiff and that "predatory towing companies like Defendant, Alpine, use [information about the toll debts of vehicle owners provided by SunPass] . . .[to] scares [sic] victims into paying often non-existent or questionable debts," [ECF No. 85, ¶ 19], it does not allege facts establishing that Alpine *regularly* collects debts of another. *See Mills v. JP Morgan Chase Bank, N.A.*, No. 1:11-CV-3709-JEC-LTW, 2012 WL 4086508, at *9 (N.D. Ga. July 23, 2012), *report and recommendation adopted*, No. 1:11-CV-3709-JEC-LTW, 2012 WL 4075634 (N.D. Ga. Aug. 14, 2012) ("[The] [p]laintiffs fail[ed] to allege any specific facts indicating that [the defendant] regularly attempts to collect debts, that the principal purpose of its business is the collection of debts, or that the principal purpose of its business is the enforcement of security interests.").

Defendants also seek the dismissal of Plaintiff's FDCPA count because "Plaintiff fails to allege harassment under the [FDCPA], by a **single act** of collecting a tow removal fee which was owed to ALPINE[.]" [ECF No. 88, p. 13 (emphasis added)]. But the alleged harassment is not the only alleged violation of the FDCPA in the SAC, *see* [ECF No. 85, ¶¶ 84–89, 92–94], and Defendants do not directly address those other alleged violations and whether they too should be dismissed. The Undersigned will not do Defendants' work for them. *See Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) ("Where a defendant seeking dismissal of a complaint under Rule 12(b)(6) does not

provide legal authority in support of its arguments, it has failed to satisfy its burden of establishing its entitlement to dismissal.").

In any event, the Undersigned **respectfully recommends** that the District Court **dismiss** Plaintiff's FDCPA claim (Count II) because it fails to allege that Alpine/Saravia are debt collectors under the FDCPA.

### D.    Declaratory Relief (Count III)

In Count III, Plaintiff seeks relief against FDOT in the form of "a declaration that as of the day of filing of this lawsuit, Plaintiff does not owe the Debt." [ECF No. 85, ¶ 102]. Defendants argue that "Count III must be dismissed under the primary jurisdiction doctrine and because it does not raise a federal question." [ECF No. 88, p. 14]. In their reply, Defendants state that because Plaintiff "failed to address Defendants' argument for dismissal of Count III in any respect," the Court should dismiss Count III with prejudice. *Id.* at 8–9.

Plaintiff discusses his declaratory judgment claim only in the context of addressing Defendants' Eleventh Amendment immunity argument.[15] He does not directly address

---

[15]      *See* [ECF No. 89, pp. 3 ("[T]he pursuit of a **declaratory judgment** against the FDOT and Secretary Perdue aligns with the contours of Eleventh Amendment immunity." (emphasis added)); 4 ("[Courts] have recognized the permissibility of **declaratory judgments** in federal court against state officials to prevent ongoing or imminent violations of federal statutes or constitutional rights." (emphasis added)); *id.* ("Plaintiff contends that the claims for both injunctive and **declaratory relief** against Secretary Perdue in his official capacity and the FDOT are not barred by the Eleventh Amendment. The relief sought in this lawsuit aims to prevent ongoing violations of federal law, fitting

the reasons raised by Defendant for dismissing Count III. Plaintiff's failure to address Defendants' arguments is grounds for dismissing this count. *See De Lima v. Unites States*, No. 23-60793-CIV, 2024 WL 762475, at *3 (S.D. Fla. Jan. 12, 2024) ("Based on [the] [p]laintiff's failure to respond to [the] [d]efendants' arguments that [the] [p]laintiff has not sufficiently pled a claim for violation of the Fifth Amendment Due Process and Equal Protection clause, [the] [p]laintiff has indicated he does not oppose the motion to dismiss [c]ount 2 of his [c]omplaint for failure to state a claim upon which relief may be granted."); *Saint-Cyr v. Walgreen Co.*, No. 22-11892, 2023 WL 6785074, at *2 (11th Cir. Oct. 13, 2023) ("With respect to Saint-Cyr's retaliation claim, the district court did not err in determining that Saint-Cyr conceded that claim by failing to address Walgreens' protected activity and causal connection arguments in his response to the motion to dismiss.").

Accordingly, the Undersigned **respectfully recommends** that the District Court **dismiss** Count III as to all Defendants.

### E.    Without Prejudice Dismissal

For the reasons discussed above, the District Court should dismiss the SAC in its entirety. Defendants argue that the dismissal of Plaintiff's claims should be with prejudice. They say that the SAC "is the **sixth (6th)** different version of [the] [c]omplaint

_____

within the permissible actions under the *Ex parte Young* doctrine and the established jurisprudence on **declaratory judgments**." (emphasis added)].

filed or submitted in this action." [ECF No. 88, p. 18 (emphasis in original)]. Defendants also state that allowing Plaintiff to amend would be futile because "[a]ny further attempt by Plaintiff to file a further revised, amended pleading would still be properly dismissed or immediately subject to summary judgment for defendants" for the reasons stated in Defendant's motion. *Id.*

Plaintiff's response does not address Defendants' request for a with-prejudice dismissal. However, he *does* assert that Defendants' motion lacks "substantive legal merit" and suggest that it "may be an attempt to exploit [ ] Plaintiff's *pro se* status, causing further delays and expenses in the litigation process." [ECF No. 89, p. 15]. Plaintiff is wrong on both counts. Federal Rule of Civil Procedure 12 specifically authorizes the filing of (and sets forth the timing for) motions to dismiss and, as evidenced by the Undersigned's recommendations, Defendants' motion *has* substantive legal merit.

"[A] *pro se* plaintiff must generally be given one chance to amend his complaint 'if it appears a more carefully drafted complaint might state a claim upon which relief can be granted even if the plaintiff never seeks leave to amend.'" *Luecke v. Fla. Dep't of Child. & Fams.*, No. 6:21-CV-1657-CEM-DCI, 2021 WL 12141638, at *3 (M.D. Fla. Oct. 14, 2021) (*Silva v. Bieluch*, 351 F.3d 1045, 1048–49 (11th Cir. 2003)). Where an amendment would be futile, the dismissal of a claim should be with prejudice. *See Irwin v. Miami-Dade Cnty. Pub. Sch.*, No. 06-23029-CIV, 2008 WL 2397622, at *2 (S.D. Fla. June 10, 2008), aff'd, 398 F. App'x 503 (11th Cir. 2010)) ("Where repleading would be futile, . . . dismissal with

prejudice is appropriate."). Moreover, "'repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of amendment, . . . can justify dismissal with prejudice." *Carvel v. Godley*, 404 F. App'x 359, 361 (11th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962)) (alteration in original).

Although, as Defendants point out, this is Plaintiff's sixth iteration of his pleading (if one counts both authorized and unauthorized amendments), Plaintiff is only proceeding now on his second amended complaint. He has already been given an opportunity to correct pleading deficiencies. Nonetheless, the Undersigned **respectfully recommends** that the District Court dismiss the SAC **without prejudice** and give Plaintiff **one (1) final opportunity** to correct his pleading deficiencies. *See Maultsby v. St. Petersburg Coll.*, No. 8:10-cv-2288-T-30TGW, 2011 WL 940468, at *1 (M.D. Fla. Mar. 17, 2011) (dismissing second amended complaint but providing *pro se* litigant with "one more chance" to amend).

The Undersigned notes that Plaintiff presently resides in Spain. To the extent any new complaint seeks injunctive relief, Plaintiff will need to plead facts showing that the complained-of actions would happen again. *Volinsky v. Lenovo (United States) Inc.*, No. 8:23-CV-00250-KKM-NHA, 2024 WL 1299315, at *4 (M.D. Fla. Mar. 27, 2024) ("[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and

43

substantial."(quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021)) (emphasis added)).

## IV.    Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Defendants' joint motion to dismiss [ECF No. 88]. The SAC should be **dismissed in its entirety**. However, Plaintiff should be provided with **one final opportunity to cure** (if possible) his pleading deficiencies.

**<u>Note:</u>** This Report and Recommendations does *not* conclude that Plaintiff in fact has viable factual and legal grounds for filing a third amended complaint. It merely recommends that he be given the opportunity to do so *if* (and this is a big if) he can do so consistent with his obligations under Federal Rule of Civil Procedure 11. If he cannot, then (obviously) he should not file a third amended complaint.

## V.    Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the United States District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary

in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985);

*Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

      **RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on April

15, 2024.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to:</u>**
The Honorable Robert N. Scola, Jr.
Eliezer Taveras, *pro se*
All Counsel of Record